UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-20-197-G |
| ) | |
| JUAN JABARI HOLLIS, ) | |
| a/k/a Juan Jabari Shinault, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Now before the Court are two Motions to Suppress (Doc. Nos. 20, 21), filed through counsel for Defendant Juan Jabari Hollis. The Government has responded in opposition to each (Doc. Nos. 27, 28). On February 4, 2021, the Court conducted an evidentiary hearing on the Motions. Defendant appeared personally and through counsel, David Autry. The Government appeared through Assistant U.S. Attorney Nick Coffey. Upon consideration of the evidence and the parties' arguments, the Court denies the Motions.

I.  Standard

"The purpose of a suppression hearing is 'to determine preliminarily the admissibility of certain evidence allegedly obtained in violation of defendant's rights under the Fourth and Fifth Amendments.'" *United States v. Maurek*, 131 F. Supp. 3d 1258, 1261-62 (W.D. Okla. 2015) (quoting *United States v. Merritt*, 695 F.2d 1263, 1269 (10th Cir. 1982)). "'The proponent of a motion to suppress has the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search.'" *Id.* at 1262 (quoting *United States v. Eckhart*, 569 F.3d 1263, 1274 (10th Cir. 2009)). The

government must then prove by a preponderance of the evidence that the search or seizure that occurred was lawful—e.g., that exigent circumstances or another exception to the warrant requirement existed or that the evidence sought to be suppressed was not the fruit of the poisonous tree. *See id.*; *United States v. Burciaga*, 687 F.3d 1229, 1230 (10th Cir. 2012); *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

    II.    *Defendant's Motion to Suppress Search of Automobile*

Defendant's First Motion to Suppress (Doc. No. 20) seeks to suppress evidence obtained from the September 11, 2019 search of a 2016 red Nissan Altima bearing an Oklahoma temporary license plate.

    *A. Background*

The evidence showed that on September 10, 2019, an affidavit completed by Oklahoma City Police Department ("OCPD") Detective Rob Gallavan was presented to an Oklahoma judge in support of an application for a warrant to search the Altima. *See* Gallavan Aff. (Doc. No. 27-1) (the "Affidavit"). In the Affidavit, Detective Gallavan states that:

- On June 25, 2019, a woman identified as "C.S." filed for a victim's protective order against Defendant. *Id.* at 1.

- C.S. and Defendant had been in an "intimate dating relationship" for approximately three years. *Id.*

- Defendant had numerous felony convictions, including convictions on firearms-possession charges. *Id.*

- C.S. reported that Defendant owned a nine mm handgun and had it in his possession during their relationship. *Id.*

- On July 26, 2019, C.S. contacted a police officer and reported that Defendant had sent multiple voicemails and texts to C.S. and to C.S.'s daughter. *See id*. In one voicemail, Defendant had threatened to kill a friend of C.S. *Id.*

- On July 30, 2019, C.S. contacted Detective Gallavan and reported that Defendant had threatened to assault and kill C.S. *Id*.

- Detective Gallavan reviewed texts and voicemails apparently sent by Defendant to C.S. in July 2019. As detailed in the Affidavit, these messages contain repeated threats to kill C.S. *Id.* at 1-2.

- On August 8, 2019, Detective Gallavan presented a charge against Defendant to the Oklahoma County district attorney for threatening an act of violence. *Id.* at 2.

- Additional voicemails and texts were sent by Defendant to C.S. and to C.S.'s daughter on August 8, 2019, and in the early morning of August 9, 2019. *See id.* at 2.

- On August 9, 2019, at 4:25 a.m., bullets were fired through C.S.'s apartment window. Two nine mm shell casings and one nine mm projectile were recovered outside of C.S.'s bedroom window. *Id.* at 3.

- On August 26, 2019, an arrest warrant was issued against Defendant in Oklahoma County District Court. *Id.* at 2.

- On August 28, 2019, Detective Gallavan and other OCPD officers arrested Defendant at an apartment where he was living with a woman identified as "A.E." *Id.* at 3.

- The apartment was leased in A.E.'s name, and A.E. also owned a 2016 red Nissan Altima that was parked next to her apartment. *Id.*

- Detective Gallavan looked through the front passenger-side window of the Altima and observed a green Crown Royal bag with a large object inside of it. *Id.* He stated that the Crown Royal bag was large enough to hold a handgun and, citing his training and experience, that Crown Royal bags are commonly used to store handguns, magazines, ammunition, and other contraband. *Id.* He also stated that his training and experience had taught him that vehicles are often used to store and/or conceal handguns. *Id.*

- Detective Gallavan noted two other items inside the vehicle: a pair of men's dress shoes on the front-seat floorboard, next to the Crown Royal bag, and a men's dress suit hanging in the backseat. *Id.*

- A.E. told Detective Gallavan that Defendant "had access to the vehicle," that Defendant "had driven the vehicle 'a couple of times,'" and that the dress suit inside belonged to Defendant. *Id.*

- A.E. gave consent to the officers to search her apartment but denied consent to search the Altima. *Id.*

- The vehicle was seized by OCPD and then secured at an OCPD location. *Id.*

As noted above, these facts were presented by Detective Gallavan in support of an application for a search warrant for the Nissan Altima. *See id.* ("Based on the evidence at the scene and statements made by Victim C.S. and A.E., your affiant believes there exists probable cause to believe there is evidence of a crime, to wit Possession of a Firearm after Former Conviction of Felony . . . and Domestic Assault and Battery with a Deadly Weapon . . . ."). On September 10, 2019, a state-court judge issued the requested search warrant, finding that sufficient evidence had been presented of Defendant's "control or possession" of the Nissan Altima and that the property in the vehicle "is the instrument of a felony or constitutes evidence an offense was committed, or a particular person participated in its commission." Search Warrant (Doc. No. 27-2) at 1.

Officers searched the vehicle the next day and found, among other items, a loaded nine mm handgun and 76 methamphetamine pills. *See* Def.'s First Mot. at 1; Gov't First Resp. (Doc. No. 27) at 6. Ballistics testing later determined that the handgun found in the Altima had been used in the August 9, 2019 shooting at C.S.'s apartment. Def.'s First Mot. at 1.

### B. Discussion

Defendant argues that the evidence seized in the search of the Altima should be suppressed, because: (1) the Affidavit failed to establish probable cause for the search; and (2) the good-faith exception does not apply to save the defective warrant. *See* Def.'s First Mot. at 4-11.

### 1. *Defendant's Standing*

As the proponent of the First Motion, Defendant "has the burden of adducing facts . . . indicating that his own rights were violated by the challenged search." *Eckhart*, 569 F.3d at 1274 (internal quotation marks omitted). The Government contends that Defendant lacks standing to seek suppression of the evidence recovered from the Altima due to Defendant's lack of a "legitimate possessory interest or lawful control over" the vehicle. Gov't First Resp. at 7 n.1 (internal quotation marks omitted) (citing *United States v. Valdez Hocker*, 333 F.3d 1206, 1209 (10th Cir. 2003)).[1]

The Court "does not have to reach" this standing issue, however, because even assuming Defendant has standing to challenge the search, the warrant for the search of the vehicle was supported by probable cause. *United States v. Collins*, No. CR-12-76-HE, 2012 WL 1952241, at *8 & n.16 (W.D. Okla. May 30, 2012) (assuming defendant had standing to challenge the search of his codefendant's property but rejecting challenge to legality of the search).[2]

---

[1] At the hearing, counsel for both the Government and the Defendant presented argument regarding Defendant's alleged access to A.E.'s vehicle and to ownership of items of personal property allegedly found inside the vehicle during the OCPD search. Notably, however, neither party presented evidence beyond the documents cited above and presented in the briefing. Thus, the statements set forth in the Gallavan Affidavit are the only evidence in the record touching upon Defendant's interest in or control over the vehicle. *Cf. Valdez Hocker*, 333 F.3d at 1209 (noting that a court may consider certain factors, including the defendant's testimony at the suppression hearing regarding "his expectation of privacy" or "legitimate possessory interest," in resolving standing issues on a car search).

[2] The Court also can quickly dispose of Defendant's suggestion that the initial seizure of the vehicle from A.E.'s apartment was itself a Fourth Amendment violation that "tainted the later search under the authority of the warrant." Def.'s First Mot. at 6 (citing *Wong Sun v. United States*, 371 U.S. 471, 478 (1963)). Defendant's cited authority does not address

6

## 2. *Probable Cause*

This Court recently summarized the relevant standards to apply when addressing a challenge to a search undertaken pursuant to a warrant:

> "A search warrant can issue only upon a showing of probable cause." *United States v. Long*, 774 F.3d. 653, 658 (10th Cir. 2014) (citing *United States v. Biglow*, 562 F.3d 1272, 1275 (10th Cir. 2009)); U.S. Const. amend. IV. "In dealing with probable cause, . . . as the very name implies, [the court] deal[s] with probabilities" that are not technical but rather the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). This standard requires more than "mere suspicion but less evidence than is necessary to convict." *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000) (internal quotation omitted).
>
> Any affidavit upon which probable cause is based "must provide a substantial basis to conclude that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *United States v. Nolan*, 199 F.3d 1180, 1182 (10th Cir. 1999) (internal quotations omitted)); *Gates*, 462 U.S. at 239 ("An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause."). That is, the affidavit must establish "a nexus between . . . suspected criminal activity and the place to be searched." *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005) (citation omitted). In order "[t]o assess the validity of a search warrant under the Fourth Amendment," the court must review "the totality of the circumstances in the affidavit provided." *United States v. Myers*, 106 F.3d 936, 939 (10th Cir. 1997) (quoting *United States v. McCarty*, 82 F.3d 943, 947 (10th Cir.) (internal quotations omitted), *cert. denied*, 519 U.S. 903 (1996)).
>
> However, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review." *Gates*, 462 U.S. at 236. . . . . "The Fourth Amendment's strong preference for warrants compels us to resolve 'doubtful or marginal cases' by deferring to [the issuing]

---

a warrantless seizure, and Defendant's bare assertion fails to "raise factual allegations that are sufficiently definite, specific, detailed, and nonconjectural" to require the Court to further consider this contention. *United States v. Glass*, 128 F.3d 1398, 1409 (10th Cir. 1997) (alteration and internal quotation marks omitted).

judge's determination of probable cause." *Biglow*, 562 F.3d at 1282 (citing *Massachusetts v. Upton*, 466 U.S. 727, 728, 734 (1984)).

*United States v. Sanchez*, No. CR-18-245-D, 2019 WL 113780, at *2 (W.D. Okla. Jan. 4, 2019) (alterations and omissions in original) (parallel citations omitted).

Defendant objects that the Affidavit presented "only speculation and surmise," rather than probable cause, "to believe the vehicle had been used in the shooting or contained the gun or any other evidence." Def.'s First Mot. at 6. Defendant further complains of a lack of connection between the August 9, 2019 shooting at C.S.'s apartment and A.E.'s Nissan Altima, arguing that the Affidavit failed to "establish[] that the Nissan Altima was used in the shooting." *Id.* at 7.

The Court disagrees. As outlined above, the Affidavit described in detail numerous instances of Defendant threatening C.S.—including immediately prior to the shooting—as well as Defendant's previous firearms-possession felony convictions. The Affidavit further stated that Defendant had been living at A.E.'s apartment, that A.E. had stated that Defendant had driven and had access to her vehicle, and that A.E. had identified a dress suit inside the vehicle as belonging to Defendant. Detective Gallavan personally viewed a Crown Royal bag "with a large object inside of it" inside the vehicle. He further stated that, based on his "training and experience," these bags are commonly used to store handguns and other contraband and a vehicle is a common place to store a handgun. Gallavan Aff. at 3. Considering the totality of circumstances, *see Myers*, 106 F.3d at 939, the Affidavit is sufficient to support a finding of probable cause and issuance of the Search Warrant. The issuing court could properly "rely on the opinion of" Detective Gallavan "as

8

to where contraband may be kept." *United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997).

Further, Defendant misconstrues the nature of the nexus requirement. It was not necessary to establish that A.E.'s vehicle was used in the shooting; it was only necessary to show a nexus between "suspected criminal activity and the place to be searched." *Gonzales*, 399 F.3d at 1228 (internal quotation marks omitted). Detective Gallavan's detailed and specific recitation of Defendant's history and interactions with C.S., together with his personal observations of the contents of A.E.'s vehicle and A.E.'s acknowledgement of Defendant's access to that vehicle, was sufficient to "lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in [the Altima]." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001).

### 3. Good-Faith Exception

The issuance of a search warrant by a magistrate "normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.'" *United States v. Leon*, 468 U.S. 897, 922 (1984) (internal quotation marks omitted). "Under the good-faith exception to the exclusionary rule, if a warrant is not supported by probable cause, the evidence seized pursuant to the warrant need not be suppressed if the executing officer acted with an objective good-faith belief." *United States v. Chambers*, 882 F.3d 1305, 1310 (10th Cir. 2018) (omission and internal quotation marks omitted).

"There are four exceptions to the good faith doctrine in which suppression remains an appropriate remedy." *Sanchez*, 2019 WL 113780, at *6 (citing *Leon*, 468 U.S. at 923). Defendant asserts that one of those exceptions applies, namely that the Search Warrant "is

9

based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* (quoting *Leon*, 468 U.S. at 923).

> "An affidavit lacks indicia of probable cause when it does not contain factual support." *Chambers*, 882 F.3d at 1310. The question to be asked is whether the affidavit is "*devoid* of factual support." *Id.* (emphasis in original). An affidavit devoid of factual support is "one that merely states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Id.* (quoting *United States v. Roach*, 582 F.3d 1192, 1204-05 (10th Cir. 2009)).

*Sanchez*, 2019 WL 113780, at *6.

As discussed above, the Affidavit presents specific allegations, including facts regarding the basis of Detective Gallavan's knowledge, that established sufficient probable cause for issuance of the Search Warrant. It follows that the Affidavit is not so "devoid of factual support" as would preclude reliance upon it. *Chambers*, 882 F.3d at 1311; *see Sanchez*, 2019 WL 113780, at *6. "[T]he good-faith exception would apply even if the Court had found the Affidavit did not establish probable cause." *Sanchez*, 2019 WL 113780, at *6.

III. *Defendant's Motion to Suppress Search of Cell Phone Records*

In his Second Motion, Defendant seeks "to suppress evidence obtained from search warrants on two cellular telephones," each using a phone number with a (405) area code. Def.'s Second Mot. (Doc. No. 21) at 1. The Government responds that the cell phones themselves were not searched; rather, the Government served search warrants on the cell-phone service providers for the records associated with the phone numbers. *See* Gov't Second Resp. (Doc. No. 28) at 1-2; *see also id.* Exs. 1, 2, Cell Phone Affs. & Warrants (Doc. Nos. 28-1, 28-2).

At the hearing, defense counsel expressly conceded that Defendant lacks standing to pursue suppression with respect to the evidence for the phone number with a 570 prefix, and so the Court considers that aspect of the Second Motion waived. *See United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1183 (10th Cir. 2009).

As for the other number, which has a 625 prefix, Defendant argues only that the underlying affidavit lacks probable cause and that the issued warrant "permitted a general, rummaging search" and so "failed to adhere to the particularity requirement." Def.'s Second Mot. at 1; *see* U.S. Const. amend. IV (prescribing that warrants must "particularly describe[e] the place to be searched, and the persons or things to be seized"); *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985) ("The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.").

A search issued pursuant to a warrant "is presumptively lawful," and "the burden is on the defendant to show any invalidity." *United States v. Nunez*, 658 F. Supp. 828, 835 (D. Colo. 1987); *accord United States v. McKneely*, 6 F.3d 1447, 1455 (10th Cir. 1993) (noting the "strong presumption in favor of warrant searches"). Defendant's vague reference to "probable cause" does not meet Defendant's burden of proof "to demonstrate *how* the search warrant is invalid." *Nunez*, 658 F. Supp. at 835; *see also United States v. Harrison*, 566 F.3d 1254, 1256 (10th Cir. 2009). Nor has Defendant shown that the warrant was insufficiently particular. To sustain a particularity challenge, "it is the defendant's burden to show a particularity problem on the face of the warrant." *United States v. Suggs*, 371 F. Supp. 3d 931, 940 (D. Colo. 2019) (citing *United States v. Carhee*, 27 F.3d 1493

(10th Cir. 1994)), *appeal docketed*, No. 19-1487 (10th Cir. Dec. 27, 2019).  Neither in the Motion nor at the hearing did Defendant address the disputed search warrant, much less specify how it raises any particularity concerns.  Regardless, the Court's review of the warrant does not reveal that it lacks sufficient particularity.

## CONCLUSION

As outlined herein, Defendant's Motions to Suppress (Doc. Nos. 20, 21) are DENIED.

IT IS SO ORDERED this 11th day of February, 2021.

_____
CHARLES B. GOODWIN
United States District Judge